## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| **JOHN G. RICHARDSON** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No: 1:17-cv-2544** |
| | ) | |
| **ELAINE C. DUKE, Acting Secretary** | ) | **Date filed:11/27/17** |
| **DEPT. OF HOMELAND SECURITY,** | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## COMPLAINT

**(Disability Discrimination (failure to accommodate), Hostile Work Environment, Retaliation in Federal Employment, Due Process Violation, and the Uniformed Services Employment and Reemployment Rights Act (USERRA))**

## Introduction

1. Plaintiff, John G. Richardson, by and through counsel Bell Law Group PLLC, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981a, 5 U.S.C. § 7703(b)(2), and the Rehabilitation Act, 29 U.S.C. § 701 to remedy acts of employment discrimination and retaliation perpetrated against him by the Defendant, the United States Department of Homeland Security (DHS) and for violation of his Due Process pursuant to 5 U.S.C. § 7513(b)(1).

2. Plaintiff contends that DHS officials discriminated against him based on his disability even after substantiated medical documentation was provided. Plaintiff further contends that management retaliated against him for having complained about such discrimination,

1

created a hostile work environment for him, caused him to suffer major depression, failed to provide reasonable accommodation, failed to further engage in the interactive process, punished him for using medical leave to deal with his disability, and finally, terminated his Federal service employment when the discrimination/ retaliation caused his incapacity. The Plaintiff contends that the Defendant has allowed discrimination and retaliation to continue by moving to remove the Plaintiff from federal service.

3. The Plaintiff further contends the Defendant's action to deny him reemployment to his former position following his return from active military service is in direct violation of his rights pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA) of 1994 (codified at 38 U.S.C. Sections 4301-4333).   Additionally, the Defendant violated his rights under USERRA when they discriminated against him because of his injury and retaliated against him because of his military service.

## **Jurisdiction**

4. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, The Rehabilitation Act, 29 U.S.C. § 701 et seq and since the Plaintiff complied with the law in exhausting all administrative remedies prior to the instant action being filed.

## **Venue**

5. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 5 U.S.C.§ 7703(b)(2); as Plaintiff was employed by the United States Department of Homeland Security (DHS) at the time of his termination, Plaintiff's employment records are maintained by DHS in this jurisdictional district, and decisions averse to Plaintiff's employment that give rise to this civil action were made in this judicial district.

**Parties**

6. Plaintiff, John Richardson, a disabled veteran, is a citizen of the United States and a resident of Virginia.  At all times, relevant to this suit, the Plaintiff was employed with DHS as a Senior Operations Analysis Specialist ("SOAS"), GS-1801-14 within Customs and Border Protection ("CBP"), Office of Internal Affairs ("IA"), Integrity Programs Division ("IPD").

7. Defendant Elaine C. Duke is currently the Acting Secretary of DHS.  Ms. Duke is being sued here in her official capacity only.

**Statement of Facts**

8. The Plaintiff had served in his position with the Office of Internal Affairs (IA), Integrity Programs Division (IPD) since September 2008.  He reported to first-line supervisor, Ryan Lid; second-line supervisor, Susan Keverline; and third-line supervisor, Jeffrey Matta.

9. In September 2010, Plaintiff was deployed to Djibouti, located at the Horn of Africa. During his 3-week pre-deployment combat training, Plaintiff unknowingly sustained severe back injuries.  Such injuries, however, did not manifest until several months later. Nevertheless, the Plaintiff remained in duty status, dedicated to completing his mission.

10. Plaintiff returned to work at CBP IA as a SOAS, the same position and grade he held prior to his deployment.

11. Plaintiff identifies that he suffers from severe serious bilateral knee and shoulder issues as well as chronic back pain[1], has been evaluated as a 90% disabled veteran, and more specifically, has been diagnosed with the following conditions: sacroiliac joint pain,

---

[1] This was also noted by Matta

scoliosis, lumbar spondylosis, lumbar radiculopathy, lumbar disc degeneration, cervical

radiculopathy and a 15-degree dextroscoliosis curvature of the spine.

12. Due to his impairments, Plaintiff indicates that he is prevented from performing major life

activities including the inability to endure prolonged sitting and standing, which are

required by his current position.  In addition, he indicates that severe pain is unpredictable,

and he experiences trouble focusing and concentrating because the pain is so severe.

13. From September 2010-2011, Plaintiff was placed in Medical Hold by Navy Medical

doctors.  During the period when Plaintiff was placed in Medical period, Plaintiff kept in

contact with Mr. Matta, and forwarded him copies of his orders.

14. On August 3, 2012, Plaintiff informed Mr. Matta that he was expecting to return to work

sometime between the second pay period of August 2012 and mid-September. Plaintiff

further notified Mr. Matta that had become a disabled veteran and that he also had some

accommodations that he would be requesting.

15. CBP Policy states that "CBP employees may submit a request for a reasonable

accommodation, orally or in writing, to his or her supervisor, another management official

in the chain of command, or to an Office of Diversity and Civil Rights Staff member."

16. On August 3, 2012, Mr. Matta acknowledged Plaintiff 's statement regarding his need for

accommodations by asking Plaintiff to forward him whatever accommodations he may

require so that the Agency could ensure that they were addressed timely.

17. Thereafter, on August 6, 2012, Plaintiff and Mr. Matta had a telephone conversation that

lasted over an hour during which they discussed possible accommodations for the injuries

he sustained and current medical condition as noted in Mr. Matta's own notes.

18. Mr. Matta noted in his own handwritten notes, that prolonged sitting and standing were no good for the Plaintiff considering his medical condition.

19. On September 6, 2012, Plaintiff sent his resume to Matta after having discussions about the possibility of transferring out of IA/IPD.

20. On September 7, 2012, Mr. Matta told Plaintiff that his position within IPD as a SOAS is waiting for him and falsely stated that CBP was on a "hiring pause at the time."

21. On September 18, 2012, upon the Plaintiff's first day back to work since being placed on a Medical Hold by Navy Medical doctors, a meeting between Ms. Keverline, Mr. Mata, Mr. Lid, and Plaintiff transpired after James Tomsheck ("Mr. Tomsheck") publicly declared that the best place for Plaintiff was in "within his current division as an SOAS." No regards to his medical condition were noted.   In a follow up meeting, Mr. Matta reiterated Mr. Tomsheck's declaration, informing Plaintiff that he was going to remain in his SOAS position and "that's that."    Once again, totally disregarding the Plaintiff's medical condition.

22. On September 20, 2012, Mr. Lid provided Plaintiff with a Human Resources contact named Dianne Nero, a specialist in Retirement Benefits, in reply to Plaintiff 's request for information on accommodations.

23. On September 20, 2012, Plaintiff reached out to such contact, but was informed that she could not assist Plaintiff, as she worked with retirement benefits.  Plaintiff then informed her that he was requesting a reasonable accommodation related to his disability/rating, including a formal request for reassignment which thus initiated the interactive process.

24. Later that day, on September 20, 2012, Ms. Nero informed Plaintiff that she could not help him with his accommodations or reassignment requests, but could discuss benefits if he so desired.

25. On October 3, 2012, Plaintiff met with Christopher Smoot ("Mr. Smoot"), CBP EEO Complaints Officer to discuss commencing the formal EEO complaint process after Agency officials continually ignored his need for reasonable accommodations that he clearly expressed to Management on numerous occasions.

26. On October 9, 2012, Plaintiff was denied help with his accommodation request when he received an email from Mr. Smoot stating, in part, "under the current circumstances, our office will not seek a reassignment on your behalf." No further consideration was expressed from the Agency on any viable alternatives to his request, further showing the Agency's disregard to the Plaintiff's medical condition and a total disregard for further engaging in the required interactive process.

27. October 19, 2012, Mr. Matta denied Plaintiff 's request for audit of Plaintiff 's payroll file to accurately account for his military leave, 40 hours of unpaid income, and refunded deductions from erroneous healthcare bills.

28. On October 24, 2012, Mr. Smoot and Mr. Matta requested more detailed information than what would have been elicited from the CBP Request for Reasonable Accommodation form.

29. On October 25, 2012, Mr. Smoot wrote a letter to management disclosing details of the confidential intake meeting that took place on October 3, 2012 and October 24, 2012 with Plaintiff.

30. On November 1, 2012, Plaintiff 's attorney provided the Agency with letters from Plaintiff's physician, Dr. Babcock, which stated that requiring Plaintiff to work in a sedentary job was unacceptable considering the extent and seriousness of his medical condition.

31. On November 7, 2012, without consent, Mr. Smoot contacted Job Accommodation Network ("JAN") to seek advice and guidance on determining an effective accommodation for Plaintiff.  JAN suggested: reduce or eliminate physical exertion and workplace stress; schedule periodic rest breaks away from the workstation; allow a flexible work schedule and flexible use of leave time; allow work from home; implement ergonomic workstation design; provide a scooter or other mobility aid if walking cannot be reduced; provide a height adjustable desk and ergonomic chair; move workstation close to common use office equipment; provide low task chair and rolling safety ladder; and provide a cart to move files, mail, and supplies.  On November 23, 2012, Mr. Matta denied Plaintiff 's request for reassignment to a non-sedentary position, even after Plaintiff's physician expressed this was not a viable option.

32. Mr. Matta instead offered: (1) the ability to take frequent breaks within the building of up to 15 minutes without supervisory approval; (2) the ability to access any team meeting room or empty office space during breaks if he needed to stretch or rest in private; (3) the ability to take longer breaks or breaks outside the building, as long as he advised management of the break in advance and of his approximate return time; (4) the ability to adjust his arrival or departure schedule in order to use the gym facilities at the Agency's offices in the Ronald Regan Building (Headquarter CBP) so long as he worked his required eight hour shift during IPD's core business hours of 7:00 am to 5:00 pm; (5) the ability to

have his work station evaluated by a specialist in ergonomic workplaces to recommend changes such as, for example, a standing work station in addition to his then-current seated workstation; and (6) the assurance that for the next six months, his requests for leave for all prescribed rehabilitation appointments would be approved.

33. Working from home was not a reasonable accommodation offered to Plaintiff even though his treating physician expressed that this would be a viable alternative working condition to accommodate the Plaintiff's medical condition AND suggested by JAN.

34. On November 29, 2012, Plaintiff 's attorney sent a letter to Mr. Matta disputing Mr. Smoot's statement that the October 24, 2012 meeting was a "confidential interactive dialogue" concerning Plaintiff's request for reasonable accommodation and requested reconsideration of the Agency's reasonable accommodation decision.  The Agency did not substantiate how they fully engaged in the interactive process when exploring options that would allow the Agency to accommodate the Plaintiff's medical condition.

35. On December 6, 2012, Plaintiff 's physician provided a letter and supplemental information regarding Plaintiff 's medical condition.  The letter stated that the "delay of accommodating and failing to grant reassignment request will only aggravate his pain and medical condition," and that Plaintiff 's assignment to a seated work station is "unacceptable and have likely exacerbated Mr. Richardson's condition" which added severe neck pain to his low back pain and leg numbness.  All of this was due in fact to the Agency's failure to engage in the interactive process.

36. On January 22, 2013, Mr. Matta informed Plaintiff that the Agency would explore the possibility of reassignment to a vacant funded position, and asked Plaintiff to provide an updated OF-612 (Optional Application for Federal Employment), a form that was no longer

used by the Agency, per Office of Personnel Management (OPM), within two weeks so that HR could review and assess qualifications.

37. In April 2013, Plaintiff provided his resume to the Agency for the second time to complete the job search for a vacant, funded, non-sedentary position per his treating physician's orders and suggestions time and time again to the Agency.

38. By April 3, 2013, the CBP job search did not result in any vacant, funded, non-sedentary positions within the local commuting area.

39. On April 8, 2013, CBP requested a DHS-wide job search for vacant, funded, non-sedentary position in the local commuting area.

40. Two vacant, funded, non-sedentary positions were found, namely a seized-property specialist and an Assistant Port Director.

41. Plaintiff was clearly qualified for such positions and the Agency did not argue otherwise.

42. The Agency willfully failed to notify Plaintiff of such vacant positions for him to actively engaged in the process to transition.

43. In a conversation on September 19, 2012, Mr. Lid asked Plaintiff "Why don't you just retire, retire?" in response to Plaintiff's attempt to explain his disability and reassignment concerns.  No consideration was given once again to find a reasonable accommodation for the Plaintiff's medical condition.

44. On September 19, 2012, Mr. Matta instructed Mr. Lid to obtain a copy of Plaintiff's DD-214 without just cause for making the request.

45. Plaintiff told Mr. Lid to advise Mr. Matta that Mr. Matta had no reason to request Plaintiff s DD-214 as nothing warranted this information to engage in the interactive process of finding a reasonable accommodation.

46. The request for Plaintiff 's DD-214 took place on September 18, 2012, the day after the Mr. Tomsheck made public statements about Plaintiff 's year of service, duty to the Country, and about Plaintiff remaining in his position.

47. On or about September 21, 2012, Mr. Lid stated that all of Plaintiff 's "issues should be run through him."

48. Mr. Lid also stated that Plaintiff could not communicate with HR concerning the issue of Plaintiff remaining in his position, or in the alternative, any other viable accommodations.

49. Thereafter, Plaintiff had been in contact with multiple people in different departments throughout the Agency seeking to find relief for his medical condition and hoping someone at the Agency would give consideration for finding a reasonable accommodation.

50. On October 2, 2012, Plaintiff emailed Franklin Jones ("Mr. Jones"), the DHS Director of Diversity and Inclusion informing Mr. Jones that he had been subjected to maltreatment as a Wounded Warrior based upon a failure to accommodate and missing pay.  Nimesh Patel, DHS Director of Diversity and Inclusion, was copied on that email. Mr. Patel responded to Mr. Jones indicating that he would defer to CBP for action.

51. On October 4, 2012, Plaintiff requested an audit relating to his pay, time, and attendance and his time away when he was on active duty to the current date.

52. On October 22, 2012, Plaintiff was provided an email and spreadsheet regarding the errors in Plaintiff 's earnings statements that only covered pay periods 17, 18 and 19.

53. On October 31, 2012, Plaintiff received an email and spreadsheet which updated his time and attendance audit to attempt to explain the salary offset that did not cover the entire time period Plaintiff requested.

54. On December 19, 2012, Plaintiff informed Mr. Matta that the Agency had yet to address his concerns regarding his payroll audit. No justification was offered.

55. On October 26, 2012 Mr. Matta cited emails as the basis of his concern for Plaintiff and recommended EAP counseling.

56. On January 22, 2013, Cheryl Warner, an EAP counselor updated Mr. Matta on her conversation with Plaintiff delineating that Plaintiff emphatically stated that he is at no risk for suicide and that he only spoke about suicide out of an obligation to those who would follow in his footsteps at the Agency.

57. Regardless of all the relevant information, the Agency moved to remove the Plaintiff on September 16, 2013 for excessive absenteeism. The Plaintiff appealed, both in writing and orally, but the Decision was sustained.

58. Last day was day of work was on December 5, 2012.  On March 8, 2014, the Agency effected the removal.

59. On April 7, 2014 the Plaintiff filed an appeal with MSPB to challenge his removal from the GS-1801-14 position.  The Plaintiff stated that the action by the Agency amounted to disability discrimination, reprisal for Equal Employment Opportunity (EEOC) activity, and a direct violation to his due process rights.

60. April 9, 2013, the Plaintiff filed an appeal informing MSPB that the Agency denied him prompt reemployment to his former position following his return from active military duty in violation of his rights pursuant to USERRA.

61. The Plaintiff also informed MSPB that the Agency had retaliated against him because of his known injury and because of his military service. [2]

62. The Defendant violated the Plaintiff's Due Process when the Deciding Official was allowed to consider factors outside of the proposal to remove the Plaintiff.

63. The Defendant further violated the Plaintiff's rights pursuant to USERRA.

## Count One

### Discrimination Based on Disability (Failure to Accommodate)

64. Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

65. DHS has clearly discriminated against the Plaintiff by continually denying him a reasonable accommodation for his disability which is in direct violation of the Rehabilitation Act of 1973, 29 U.S.C. Section 701 *et seq.*, as amended.

66. The Agency failed to further engage in the interactive process of finding a reasonable accommodation for the Plaintiff even after substantial medical documentation was provided by his treating physician.  The Agency continually failed to engage the Plaintiff to discuss options to keep him gainfully employed.

67. DHS has conducted itself intentionally, deliberately, and willfully, and in a callous disregard of the rights of the Plaintiff.

68. By reason of DHS's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act and any other law the court deems applicable.

---

[2] MSPB Decision is attached hereto, which, the Plaintiffs believes is arbitrary and capricious.

## Count Two

### Hostile Work Environment

69. The forgoing paragraphs are realleged and incorporated by reference herein.

70. The Defendant's conduct as alleged above clearly constitutes a hostile and abusive working environment that is in direct violation of Title VII of the Civil Rights Act and the Rehabilitation act aforementioned.

71. The Defendant's states reasons to justify their actions regarding the toxic conduct were not authentic and all reasons alleged are false.  Instead, their reasons are merely pretext to hide the Defendant's discriminatory animus towards the Plaintiff.

## Count Three

### Retaliation

72. The foregoing paragraphs are realleged and incorporated by reference herein.

73. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he previously had engaged in protected EEO activity that is protected by Title VII of the Civil Rights Act.

74. The Defendant's had knowledge of the Plaintiff's engagement of prior protected activity and Management officials were clearly aware of the nature of the Plaintiff's complaint regarding his protected EEO status.

75. The Agency continually delayed, without just cause, the requested reasonable accommodation which morphed into an adverse employment action towards the Plaintiff.

76. The paragraphs aforementioned show that a causal link has been demonstrated that his prior EEO activity and the adverse actions taken by the Agency were not wholly unrelated.

77. The Defendant's actions took place after the Plaintiff's several complaints about the mishandling of his reasonable accommodation process and the filing of his EEO complaint.

78. The stated reasons for the Defendant's conduct are not the true reasons for the action taken, but instead were pretext to hide the Defendant's retaliatory animus towards the Plaintiff.

## Count 4

### Due Process Violation

79. The foregoing paragraphs are realleged and incorporated by reference herein.

80. The Defendant violated the Plaintiff's Due Process rights pursuant to Due Process pursuant to 5 U.S.C. § 7513(b)(1) when they removed him from his position.

81. The Plaintiff asserts that the Deciding Official improperly considered factors outside of the proposal notice, which is not permitted.

82. DHS has conducted itself intentionally, deliberately, and willfully, and in a callous disregard of the Due Process rights of the Plaintiff.

83. By reason of DHS's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the law where the court deems applicable.

## Count 5

### USERRA

84. The forgoing paragraphs are realleged and incorporated by reference herein.

85. The Defendant violated USERRA pursuant to 38 U.S.C. §§ 4312-4318 when the Defendant used his military service as a motivating factor in proposing and sustaining the decision to remove.

86. The Defendant willfully failed to reemploy the Plaintiff fully to his former position prior to his military service.

87. By reason of DHS's discrimination and failure to reemploy the Plaintiff as aforementioned, the Plaintiff is entitled to all legal and equitable remedies available under the law where the court deems applicable.

## Count 6

### General Efficiency of Federal Service

88. The forgoing paragraphs are realleged and incorporated by reference herein.

89. It did not promote the efficiency of service to remove the Plaintiff from his position with the Agency.  Under the circumstances as set forth in above, the Agency failed to adequately evaluate all factors relevant before proceeding to removal.

90. The Defendant willfully failed to consider relevant mitigating factors that demonstrated the general efficiency of federal service weighed in favor of rescinding the removal. Thus, the Decision should have never been sustained.

91. Plaintiff is entitled to all legal and equitable remedies available under the law where the court deems applicable.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award him:

(a) The sum of 10 million dollars in compensatory damages suffered because of the discrimination and retaliation in order to make the Plaintiff whole again.

(b) Punitive damages against the Defendant in the amount that the Court deems Plaintiff is entitled.

(c) Back pay at the pay grade Plaintiff held prior to termination, including pay increases that are applicable, benefits, and other emoluments of employment the Court deems applicable.

(d) Costs and reasonable attorney's fees incurred with this lawsuit with interest therein; and

(e) Any other damages and further just relief that the Court deems applicable to this lawsuit.

## **Jury Demand**

The Plaintiff requests trial by jury.

November 27, 2017

Respectfully submitted,

_____/s/_____

Roger D. Locklear
Bell Law Group, PLLC
1629 K Street NW, Suite 300
Washington DC 20006
Email: rl@BellLG.com
Phone: (202) 577-3458
Fax: (212) 656-1845

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing Complaint was served by first-class mail, postage prepared, AND emailed to counsel on record, on the _____ day of November 2017, upon:

Customs and Border Protection
Office of Chief Counsel
1300 Pennsylvania Avenue, NW
Room 4.4B
Washington, DC 20229
(T) 202-344-2940
(F) 202-344-2950